UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA ANDERSON ET AL. | CIVIL ACTION |
| VERSUS | NO: 15-4489 |
| SHERIFF MIKE TREGRE ET AL. | SECTION "H" |

## ORDER AND REASONS

Before the Court is Defendants Sheriff Mike Tregre, Sergeant Richard Dubus, and Detective Thomas Ricks' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 34). Upon review of the motion and opposition, this Court converted the motion to a Motion for Summary Judgment and ordered supplemental briefing by both parties (Doc. 47). Having considered those supplements, as well as the original briefing of each party, Defendants' Motion for Summary Judgment is GRANTED for the following reasons. In addition, Defendants' Motion to Object to Inadmissible Affidavit (Doc. 53) is GRANTED.

## BACKGROUND

Plaintiffs, the wife and children of the decedent Detective Nolan Anderson, brought this action against Defendants Sheriff Mike Tregre, Sergeant Richard Dubus, and Detective Thomas Ricks for the shooting death

of Detective Nolan Anderson. In their Second Supplemental and Amended Complaint ("Complaint"), Plaintiffs allege that Anderson was shot and killed by Detective Ricks and Sergeant Dubus during an armed stand-off during which Anderson kidnapped, beat, and threatened to kill his wife. Plaintiffs allege that two days prior to the incident, Anderson, a detective with St. John the Baptist Sheriff's Department, met with Sheriff Tregre and Major Clarence Gray to discuss personal problems he was experiencing. At that meeting, Anderson declared his intent to retire immediately and tendered his badge, commission, and firearm. According to the Complaint, Major Gray and Sheriff Tregre refused to allow Anderson to retire and did not confiscate his weapon or badge.

Plaintiffs allege that Sheriff Tregre was negligent in the training and management of his staff, in failing to offer or require Anderson to undergo mental health counseling, in refusing to take Anderson's badge and gun away, and in refusing to allow Anderson to retire or take personal leave to deal with his mental health issues. Plaintiffs allege that Detective Ricks and Sergeant Dubus were negligent in shooting Anderson despite orders to stand down and in failing to choose a non-lethal alternative. Plaintiffs brings claims under 42 U.S.C. § 1983, as well as state law.

In this Motion, Defendants contend that Plaintiffs cannot succeed on their claims under 42 U.S.C. § 1983 or state law and that they are entitled to qualified immunity from Plaintiffs' claims.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

---

[1] Fed. R. Civ. P. 56(c) (2012).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW & ANALYSIS

Although Defendants raise several arguments for dismissal, this Court must first consider whether the Defendants are entitled to qualified immunity.[9] Qualified immunity protects officers charged with discretionary duties from suit unless their conduct violates a clearly established constitutional right.[10] Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[11]

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. . . . The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation.[12]

Plaintiffs have the burden of rebutting "the officers' qualified-immunity defense by establishing a genuine fact issue as to whether the officers' allegedly wrongful conduct violated clearly established law."[13] This Court will consider Plaintiffs' allegations against each Defendant in turn.

### A. Defendant Richard Dubus

In their Complaint, Plaintiffs allege that Defendant Dubus shot Anderson despite an order from his commander Lieutenant Gregory Baker to stand down to allow more time for negotiations with Anderson. They allege

---

[9] *See Joseph v. Port of New Orleans*, No. 99-1622, 2002 WL 342424, at *6 (E.D. La. Mar. 4, 2002) ("Most recently in *Saucier v. Katz*, the Supreme Court reiterated the sequence in which a trial court is to consider the qualified immunity defense issues. In a suit against an officer for an alleged violation of a Constitutional right, the requisites of a qualified immunity defense must be considered in the proper sequence early in the proceedings so that the costs and expenses of trial are avoided when the defense is dispositive.").

[10] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 378 (5th Cir. 2005).

[11] *Id.* at 380.

[12] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotations and alterations omitted).

[13] *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

4

that at the time of the fatal shooting, Anderson did not pose any imminent danger.

Defendants submit evidence revealed during discovery, however, that indicates that Dubus fired at Anderson after Anderson had begun shooting his gun into the air with his hand around his wife's neck. Dubus testified that he was concerned for Anderson's wife, the officers on the scene, and innocent civilians in the area. Dubus stated that he made the decision to fire his weapon at Anderson based on "the totality of circumstances," namely, Anderson making threats over the police radio to his wife and the officers, becoming more agitated and reloading his gun, and discharging his gun over the officers into the air. In addition, Dubus testified that he never received an order from Baker to stand down, and Baker testified that no one was giving orders to Dubus.

Plaintiffs have submitted no evidence to dispute these facts. The testimony pointed out by Plaintiffs merely establishes that Baker and Dubus had a conversation regarding how to handle the situation. Baker expressed a desire to resolve the situation through negotiation, and Dubus stated, "Greg, do what you've got to do, I'm going to give you all the time I can, but I'm letting you know that if I've got to take that shot, I'd take that shot." This conversation neither indicates to this Court that Dubus was given an order to stand down nor that he disregarded such an order. Rather, it indicates that Dubus was prepared to take the necessary action to protect Anderson's wife and others—even if that meant killing a colleague.

"In order to succeed on a § 1983 claim that the defendants violated his Fourth Amendment right against excessive force, a plaintiff must show that he was seized and that he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force

5

used was objectively unreasonable..."[14] "[T]he court must ask whether, at the time of the incident, the law clearly established that such conduct would violate the [constitution]. This inquiry focuses . . . on the specific circumstances of the incident—could an officer have reasonably interpreted the law to conclude that the perceived threat posed by the suspect was sufficient to justify deadly force?"[15] The objective reasonableness of the force should be gauged "by balancing the amount of the force used against the need for the force."[16] "The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others."[17]

Here, it is clear to this Court that Dubus was reasonable in his decision to use deadly force against Anderson. Anderson had made threats against his wife and the officers, pistol whipped his wife, continued to hold his wife hostage, and fired his weapon into the air. This Circuit has granted qualified immunity to officers who used deadly force in response to far less.[18] In a similar case, *Ballard v. Burton*, the Fifth Circuit upheld a finding of qualified immunity for an officer who used deadly force against a mentally unstable, suicidal man who had fired shots into the air near the officers.[19] The court stated that "[the officer] was confronted with a mentally disturbed person who had, during the course of the night's events refused to put down his rifle, discharged the rifle into the air several times while near officers, and pointed it in the general direction of law enforcement officers. We find that, regardless

---

[14] *Ballard v. Burton,* 444 F.3d 391, 402 (5th Cir. 2006).
[15] *Reyes v. Bridgwater,* 362 F. App'x 403, 408 (5th Cir. 2010).
[16] *Hobart v. Estrada,* 582 F. App'x 348, 355 (5th Cir. 2014).
[17] *Reyes,* 362 F. App'x at 408.
[18] *See Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir. 1991) (holding that an officer was reasonable for using deadly force when an armed robbery suspect reached down several times in defiance of the officer's orders to keep his hands up despite the fact that it was ultimately revealed that the suspect was unarmed).
[19] *Ballard,* 444 F.3d at 402–03.

of the direction in which Ballard pointed the rifle just before he was shot, a reasonable officer in these circumstances would have reason to believe that Ballard posed a threat of serious harm to himself or to other officers."[20] Accordingly, this Court finds that Dubus is entitled to qualified immunity from Plaintiffs' claims against him.

## B. Defendant Thomas Ricks

In their Complaint, Plaintiffs allege that Defendant Ricks fired a shot at Anderson after he had already been incapacitated by the shots fired by Dubus, and thus Anderson no longer presented an imminent threat. The testimony of Dubus, however, makes clear that Anderson was not incapacitated by his first shot and that he remained in possession of his firearm. The evidence also shows that the round fired by Ricks was shot at the exact moment that Dubus fired his second and third rounds—each mere seconds after Dubus's initial shot. Plaintiffs have not presented any evidence to dispute this testimony. Accordingly, this Court holds that Ricks's decision to fire was reasonable for the same reasons that it has already held that Dubus's decision was reasonable. The Fifth Circuit has instructed that "courts must allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[21] Here, Ricks chose to shoot when Dubus's first shot did not incapacitate Anderson and he remained in possession of his gun. Accordingly, this Court holds that Ricks is entitled to qualified immunity from Plaintiffs' § 1983 claim against him.

---

[20] *Id.*
[21] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014) (internal quotation omitted).

## C. <u>Defendant Mike Tregre</u>

Plaintiffs' Complaint alleges that two days prior to the incident that resulted in Anderson's death, Anderson met with Sheriff Tregre and Major Clarence Gray and told them about the "significant and disturbing personal issues he was experiencing." Plaintiffs allege that at this meeting Anderson expressed his intent to retire immediately and tender his badge and firearm, but Tregre and Gray refused his request to retire. The Complaint states that Anderson was in possession of his police weapon at the time of the incident. Plaintiffs claim that Tregre was negligent in training his staff, in failing to allow Anderson to retire, in failing to take away his firearm, and in failing to offer him mental health counseling.

Defendants respond that discovery has revealed that, in fact, no such meeting took place. Defendants attach an affidavit from Sheriff Tregre in which he swears that he never met with Anderson and that he was unaware of Anderson's personal issues or any desire to retire. In addition, Sheriff Tregre states that the firearm used by Anderson during the incident was his personal property and thus he had no authority to take it away.

In response, Plaintiffs put forth an affidavit from two of Anderson's children in which they attest that a few days prior to the incident, Anderson told them that he had attempted to resign. The affidavit states that Anderson said that he met only with Major Gray regarding his desire to retire and emotional issues. In addition, Defendants argue in a separate motion that this affidavit is inadmissible hearsay. This Court agrees. The affiants' statements—that their father told them about a conversation he had with someone else—are classic hearsay.[22] Plaintiffs argue that the statement

---

[22] *See* Fed. R. Evid. 801.

8

qualifies as an exception to hearsay under Federal Rule of Evidence 807. Rule 807, the residual exception, states that:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Plaintiffs' affidavit lacks the requisite level of trustworthiness to be admissible under the residual exception. Defendants attach an affidavit from Gray to their motion objecting to the admissibility of Plaintiffs' affidavit in which Gray attests that, although he did meet with Anderson regarding a domestic matter in the days before the shooting, Anderson never expressed an intent to resign immediately. Certainly Major Gray's statements are more trustworthy than the hearsay of Anderson's children because Major Gray had personal knowledge of the meeting with Anderson. Accordingly, the Defendants' Motion to Object to Plaintiffs' Inadmissible Affidavit is granted, and the affidavit of Nolandra and Shondrika Anderson is stricken from the record as inadmissible hearsay.

Even accepting the allegations provided in the inadmissible affidavit, Plaintiffs have not provided this Court with any evidence to support their allegation that Sheriff Tregre met with Anderson, knew of his personal troubles, or denied his request to retire. They have not created a material issue of fact regarding Defendants' assertion that a meeting between Anderson and Tregre never occurred. Accordingly, Plaintiffs cannot succeed on their claims that Tregre was negligent in failing to allow Anderson to retire, in failing to

take away his firearm, and in failing to offer him mental health counseling. In addition, Plaintiffs cannot show that Tregre violated a clearly established constitutional right, and he is therefore entitled to qualified immunity on these claims.

In addition, Plaintiffs fail to point to any evidence establishing Tregre's failure to properly train or supervise his staff. "A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[23] To establish this claim against Tregre, Plaintiffs put forth conclusory allegations regarding the mismanagement of Sheriff Tregre's department and point to alleged aspects of the incident at issue in this matter as evidence. To show deliberate indifference, however, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[24] In addition, Plaintiffs do not provide evidence of a single act of negligent training or supervision performed personally by Tregre. Instead, they point to a failure of the chain of command between the members of the team that responded to the Anderson hostage situation. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[25] Accordingly, it cannot be said that Tregre was objectively unreasonable in any action in training and supervising his staff because Plaintiffs have not identified any

---

[23] *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir. 2001)
[24] *Id.*
[25] *Id.*

10

such action.  Accordingly, Tregre is entitled to qualified immunity on this claim as well.

### D. State Law Claims

In addition to their claims under § 1983, Plaintiffs bring claims based on the same facts under Louisiana tort law.  In defense of these claims, Ricks and Dubus claim the affirmative defense of justifiable homicide.  Louisiana Revised Statute § 14:20(b) states that: "A homicide is justifiable when committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention."  For the reasons discussed above, Ricks and Dubus are entitled to this defense, and the state law tort claims against them are dismissed.[26]

In addition, as discussed above, Plaintiffs have not provided evidence that Sheriff Tregre met with Anderson, knew about his personal issues, or preformed any act of negligent training or supervision.  Accordingly, Plaintiffs likewise cannot succeed on any claim under state tort law against Tregre based on these facts, and they are therefore dismissed.

To be sure, the facts of this case are profoundly tragic.  Plaintiffs have lost their husband and father; Defendants were forced to make the difficult decision to shoot a colleague.  Nonetheless, there is simply no legal basis upon which this case can proceed, and this Court therefore must therefore dismiss Plaintiffs' claims.

---

[26] *See Duplechain v. Turner*, 444 So. 2d 1322, 1325 (La. App. 4 Cir.) ("[C]onduct which would otherwise be a tortious battery may be justified as self-defense, or in defense of others. When justified, there is no civil liability.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, and this matter is DISMISSED WITH PREJUDICE. In addition, Defendants' Motion to Object to Inadmissible Affidavit is GRANTED, and the affidavit of Nolandra and Shondrika Anderson is STRICKEN from the record (Doc. 49-1).

New Orleans, this 14th day of March, 2017.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**